41650. STATE BOARD OF EDUCATION v. ELBERT COUNTY BOARD OF EDUCATION.

ARGUED NOVEMBER 1, 1965—DECIDED DECEMBER 3, 1965—
REHEARING DENIED DECEMBER 16, 1965.

*Arthur K. Bolton, Attorney General, Alfred L. Evans, Jr., Assistant Attorney General,* for appellant.

*Heard & Leverett, E. Freeman Leverett,* for appellee.

JORDAN, Judge. This case arises from a decision and order rendered by the State Board of Education on May 19, 1965, in connection with a hearing on whether or not a portion of state school funds allotted to the Elbert County Board of Education should be withheld due to an alleged failure of the Elbert County Board of Education to comply with the terms of a contract between it and the State Board of Education.

The contract or agreement in question provided for a grant by the State Department of Education of $4,000 to the Elbert County Board of Education during the 1964-65 school year in order to finance an advanced study and research project to be undertaken by William B. Cheshire, Jr., an elementary school principal in the Elbert County School System. In form, the agreement consists of a letter from Dr. Claude Purcell, State Superintendent of Schools, to Mr. Cecil E. Palmer, who was then Superintendent of the Elbert County School System, coupled with the latter's execution of the same, ostensibly for and on behalf of the county board of education. In the letter, dated June 9, 1964, certain conditions were attached to the research grant by means of the following language:

"It is understood that Mr. Cheshire will be in residence on the campus of the University of Georgia during the period September 1964 to June 1965, for the purpose of completing his advanced graduate study and completing the design for the research to be carried out in the Elbert County School System. It is further understood that Mr. Cheshire agrees to return to your school system for the school year 1965-66 during which time he will see that the research project is fully implemented in your school system. At the completion of the project, he will be required to present a summary report of the results to the State Department of Education so that the results of this research can be disseminated to other school systems in the State."

This letter, which was written pursuant to authorization of the State Board of Education for Dr. Purcell to make grants to ten school systems for research projects in conjunction with the

College of Education of the University of Georgia, concluded with the following provision:

"If the Elbert County School System accepts this grant under the conditions stipulated above, please execute this grant acceptance and return to this office."

The letter was subsequently returned to the State Department of Education with the apparent acceptance of the Elbert County Board of Education thereon as follows:

"Accepted: Elbert County Board of Education.

By: Cecil E. Palmer.

Title: Supt. Date: June 12, 1964."

On the basis of this ostensible agreement and contract between the State Board of Education (through its authorized agent, Dr. Claude Purcell, State School Superintendent) and the Elbert County Board of Education "by Cecil E. Palmer," Superintendent of the Elbert County School System, the ensuing June payment of state school funds to the Elbert County School System, which was by a check dated June 26, 1964, payable to the order of "Elbert County Board of Education" was adjusted upwards to include the $4,000 research grant. This adjustment was reflected in correspondence forwarded to the Elbert County School System along with the check and it is conceded that the Elbert County Board of Education did receive the $4,000 research grant.

During October 1964, it developed that Mr. Cheshire, the ultimate recipient of the research grant to the Elbert County School System, had not taken up residence on the campus of the University of Georgia as required by the contract and agreement in question, and was instead continuing to be fully employed in the Elbert County School System. For this reason and in order to protect its commitment to the State Department of Education respecting the obligations of students in the department's graduate research grant program, the University of Georgia canceled the fall-quarter registration of Mr. Cheshire. It appears that at the time his registration was canceled $3,000 of the $4,000 research grant to the Elbert County School System had already been disbursed by the Elbert County School Superintendent to Mr. Cheshire.

On December 2, 1964, Dr. Claude Purcell, State Superintendent of Schools, wrote a letter to C. E. Palmer, who at that time was still Superintendent of the Elbert County School System, inquiring as to whether Mr. Cheshire had arranged to reimburse the Elbert County School System for the amount of the research grant paid out to him and further pointing out that it would be necessary for the State Department of Education to withhold the full amount of the research grant it had paid to the Elbert County School System from the state funds scheduled to be paid to the local system in December. A similar letter was posted on December 14, 1964, to Mr. Lee Atkinson, Superintendent-Elect of the Elbert County School System.

Subsequent to a meeting of the Elbert County Board of Education held on December 21, 1964, the attorney for the local board, on December 22, 1964, wrote a letter to Dr. Purcell protesting the latter's action directing that the sum of $4,000 be withheld from the December allotment of state school funds to the Elbert County School System and pointing out that Section 56 of the 1964 "Minimum Foundation Program of Education Act" (Ga. L. 1964, pp. 3, 47) authorized such withholding of funds only after a local system had been afforded notice and opportunity for hearing before the State Board of Education. The attorney for the State Board of Education concurred in the view that the law required notice and opportunity for hearing as a prerequisite to the withholding of funds by the State Board of Education, and accordingly a letter was posted to Lee Atkinson, School Superintendent of the Elbert County School System (the successor in office to Cecil E. Palmer) on March 12, 1964, formally notifying him of the intention of the State Board of Education to withhold $4,000 from the Elbert County School System because of the fact that the alleged contract between the State and Elbert County school boards was not being carried out. The letter also informed the Elbert County School System of its right to a hearing on the matter before the State Board of Education.

On March 26, 1965, the attorney for the Elbert County Board of Education wrote a letter to the State Board of Education to request a hearing on the matter. The letter stated in essence

that the former Elbert County School Superintendent had failed to inform the Elbert County Board of Education as to the details of the research grant, and that it was not until late November or early December, 1964, that the Elbert County Board was informed that the State Department of Education considered the Elbert County School Board to be involved in any way, or, that the details of the arrangement were brought to the attention of the local board.

The letter further stated the legal contentions of the Elbert County Board of Education respecting its view that it could not be held liable to be the following:

"(1) It had not legally authorized its superintendent to bind the local Board in this matter.

"(2) The State Board has no regulations governing the disbursement of this money which would require that the loss fall upon the local system.

"(3) The law itself does not authorize the State Board to pay this money through local boards in such manner as to make them liable therefor."

These same contentions were advanced at the hearing before the State Board of Education on May 19, 1965, and after considering the oral and documentary evidence submitted in the matter, the State Board of Education, by unanimous vote, entered its decision and order denying the appeal of the Elbert County Board of Education and directing the State Superintendent of Schools to withhold the $4,000.

Being dissatisfied with the decision and order of the State Board of Education, the members of the Elbert County Board of Education filed their statutory appeal therefrom (pursuant to Sections 56 and 43 of the Minimum Foundation Program of Education Act (Ga. L. 1964, pp. 3, 38, 47; Code Ann. §§ 32-643, 32-656) in the Elbert Superior Court, under the name and style of "Elbert County Board of Education" versus "State Board of Education." The individual members of the State Board of Education were not named as defendants. Said appeal assigned error on the decision and order of the State Board of Education of May 19, 1965, and alleged as legal issues the same contentions it had advanced before the State Board of Education. The

appeal also showed that the Elbert County Board of Education had recovered the sum of $1,613.14 from Mr. Cheshire, which, when added to $1,000 of the research grant not actually disbursed to him, reduced the amount actually in controversy to the sum of $1,386.86.

As its response to this appeal, the State Board of Education filed a motion to dismiss on July 20, 1965, on the ground that the State Board of Education, the sole entity named as appellee, was not a legal entity against which a legal proceeding could be maintained. On the same date the State Board of Education also filed its answer to the appeal wherein the factual allegations of the appeal were generally admitted while the legal contentions, including that of error on the part of the State Board of Education in its decision and order, were denied. The answer to the appeal also alleged that even if the county board of education had not become bound to the contract in question in the first instance for the reason that the school superintendent lacked authority to execute the same for the local board, it nonetheless became subsequently bound in that it had ratified the same both by failure to repudiate and by taking actions more consistent with ratification than repudiation.

The appeal came on for hearing before the Elbert Superior Court on August 20, 1965, at which time argument was heard from counsel for both parties. On September 1, 1965, the court entered its judgment on the appeal wherein it overruled the motion of the State Board of Education to dismiss the appeal and instead sustained the appeal, reversing and setting aside the decision rendered by the State Board of Education on May 19, 1965, and directed that the sum of $1,386.86 be refunded to the Elbert County Board of Education. The appeal to this court is from that judgment.

1. This was a statutory appeal to a superior court from a decision of the State Board of Education as expressly authorized by Section 56 of the Minimum Foundation Program of Education Act (Ga. L. 1964, pp. 3, 47; Code Ann. § 32-656). The state board was thus by operation of law a legal entity for the purpose of authorized appeals from its rulings under this Act (see Cravey v. Southeastern Underwriters Assn., 214 Ga. 450

(1), 453 (105 SE2d 497)); and it was not necessary for the individual members of the State Board of Education to be made parties to the appeal as if this was an original suit. The superior court did not err in denying the appellant's motion to dismiss the appeal.

2. The superior court did not err for any reasons enumerated in entering judgment for the Elbert County Board of Education, the appellee here. The undisputed evidence adduced on the hearing before the State Board of Education disclosed that the county superintendent of schools had not been authorized by the county board to execute in its behalf the purported contract with the state board and *a finding that the contract had been subsequently ratified by the county board was not authorized.*

The control and management of a county school district is in the county board of education under the Constitution and laws of this State (Art. VIII, Sec. V, Par. I, Constitution of 1945, *Code Ann.* § 2-6801; *Code* § 32-901) and the county board is without power to delegate its authority to manage the affairs of the school district. *Tipton v. Speer,* 211 Ga. 886 (89 SE2d 633). The county school superintendent is the executive officer of the county board (Art. VIII, Sec. VI, Par. I, Constitution of 1945; *Code Ann.* § 2-6901), his duties being administrative only (*Code* § 32-1009), and, as stated in *American Ins. Co. v. Seminole County Bd. of Educ.,* 51 Ga. App. 808 (2) (181 SE 783), "A county superintendent of schools cannot contract a debt on behalf of the county board of education without previous authority from the board. . ."

The State Board of Education is seeking here to hold the county board liable for breach of a contract executed by the county school superintendent without authority of the county board; and in our opinion, neither the provisions of *Code* § 32-1009 that the county superintendent shall be the "medium of communication between the State Superintendent of Schools and the subordinate school officers," nor any other provisions of law relied upon by the appellant, are sufficient to alter the general provisions of law enunciated above, so as to allow a school superintendent to contract with the state board on behalf of a county board without express authorization from

the county board, or to allow the state board to rely conclusively on the representation of the county superintendent that the county board had authorized the contract.

A finding was therefore demanded that the county board was not bound by the purported contract, and the state board was clearly without authority to withhold funds from the county board because of its alleged breach of the contract. Whether or not the state board would have been authorized to withhold these funds under the circumstances present in this case, even if the contract had been legally executed, need not be decided. However, attention is called to the fact that *Code Ann.* § 32-656, which is the basis of the state board's alleged authority to withhold allotted funds from a county board, provides only that funds may be withheld "until such time as full compliance is made by the local unit" with the terms of any contract with the state board and does not expressly provide that the state board may withhold funds as damages for breach of contract of which there can not be full compliance by the county board.

*Judgment affirmed. Felton, C. J., and Deen, J., concur.*